IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA

MARTHA JANE JOHNSON #202230,
  Plaintiff,

VS

FRANK ALBRIGHT, Warden of Julia Tutwiler Prison,

CYNTHIA WHEELER, Administrative Captain of
  Julia Tutwiler Prison (JTP)

RICHARD ALLEN, Commissioner of Alabama
  Department of Corrections

KIM TOBIAS THOMAS, Counsel of Record for
  Alabama Department of Corrections (DOC)

JUNE MASON, Correctional Officer (C.O.)

ET AL.

2006 JUN 20 A 9:51

CIVIL ACTION NO. 2:06CV546-W

MOTION SEEKING URGENT INJUNCTION AND DECLARATORY RELIEF OF ACTUAL AND IMMINENT DAMAGE AND SUBSTANTIAL HARDSHIP, BY MANDATE OR OTHER ACTION

COMES NOW, Plaintiff, MARTHA JANE JOHNSON, pro se, in the above-styled cause to humbly and respectfully plead for urgent injunction and declaratory relief and for good cause shown would submit for consideration:

1. The defendants are employees of the state of Alabama, whereby this court has jurisdiction pursuant to 42 U.S.C. §1983 and 28 U.S.C. §§ 1331 and 1343.

2. There are substantial violations of United States Constitution provided in First, Sixth, Eighth and Fourteenth Amendments.

3. Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed. 2d 606 (1996)(fn 2)
"see, e.g., Jenkins v. Lane, 977 F.2d 266, 268-269 (C.A.7 1992) (waiving the requirement that a prisoner prove prejudice "where the prisoner alleges a direct, substantial and continuous rather than a 'minor and indirect' limit on legal materials" on the grounds that a prisoner without any access to materials cannot determine the pleading requirements of his case, including the necessity of pleading prejudice"); cf. Strickland v. Waters, 989 F.2d 1375, 1385, n.16 (C.A.4 1993) (acknowledging the possibility that injury may be presumed in some situations, e.g., total denial of access to a library), cert. denied, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed 2d 341 (1993); Sowell v. Vose, 941 F.2d 32, 35 (C.A.1 1991)(acknowledging that a prisoner may not need to prove prejudice when he alleges "[a]n absolute deprivation of access to all legal materials"...) Dispensing with any underlying claim requirement in such instances would be consistent with the rule of equity dealing with threatened injury ..."

4. In the cause at hand the actual damage stage is that isolation on the most crucial day voided pursuing petition for writ of certiorari — by retaliation of Warden Albright for exercising Freedom Speech in two entities an unjustified lockdown in segregation under the guise of protective custody. Years ago, two co-defendants were on protective custody rotation — but now one is in JTP and one in Louisiana. If this excuse were viable that would be the case — one in Louisiana, one in JTP in the immediate case — or one at the Annex and

1

one on the main campus. It becomes obvious that this arbitrary lockdown was in retaliation for quoting case law to achieve rights of reasonable access. Moreover, in being made aware that Plaintiff's appeal was on a crucial timing — it would have been less obvious if the other party would be the first in "protective custody" lockdown.

(1) Repeated requests for paper — a most basic tool has been refused. Confinements blocks borrowing from others. (inmates with paper)

(2) The haphazard legal clerk repeatedly brings the wrong book. One book or two even on some weeks for a five minute clause to be copied. Restriction on two books for four hours became two for two weeks - on two not needed that long.

(3) Requests for notary and copies have been evaded at a crucial time.

(4) Without the restrictive lockdown the needed verbatims would have been completed in one day (May 18, 2006) mailed out the next before mail pickup 8:30 am and in the hands of outside contact for copying and forwarding in ample time before the 90 day deadline from February 24.

(5) Now the state created impediment requires an endorsed or notarized acknowledgement by the contributing authorities in hopes of being granted leave by the United States Supreme Court as cause being beyond control of the Petitioner for a Petition for Writ of Certiorari.

5. Now it is prayed this Honorable and Learned Court recognize cause and prejudice and by whatever injunctive or declarative action deemed appropriate help provide a proper avenue for recovery.

6. It is also pleaded for an injunction to have immediate release back into population to have liberal liberties and access to legal research. Phone calls are once a month in segregation (seg) making a call to connect with outside contact on copying and forwarding and follow up discussion impossible. In population the calls would have been made, research completed and no default on the Petition for Writ of Certiorari.

7. Access to Lawyers and courts have been also roadblocked in violation of First and Sixth and Fourteenth Amendments. In retaliation Warden Albright blocked a previously approved (and belated) call to Public Federal Defender (see memorandum Brief)(Brief) New Warden Albright is ignoring a letter from a District Attorney (see Brief, and Appendix A) By that arbitrary conduct it is pleaded that an injunction is needed to have reasonable access.

8. Paper, pens, postage, legible carbon (or copies) have been refused. This litigant has had a 0 (zero) balance since January 18, 2006. In spite of Bounds V Smith 430 US 817, 97 S.Ct. 1491, 52 L Ed 2d 72 (1977)(hn 6) "Indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notary services to authenticate them, and with stamps to mail them. Authorities at JTP have retaliated numerous times on this quote (see Brief) January 11, 2006; 2006; May 11, 2006; May 19, 2006; May 22, 2006; June 6, 2006; and Warden Albright ignores requests May 19, 2006, and May 22, 2006; and June 5, 2006. Cpt Wheeler evaded requests on confrontations numerous times in restriction dorm and May 26, 2006 in Seg & June 2, 2006; in Seg. These blatant roadblocks have destroyed due process and equal protection of the law in violation of the Fourteenth Amendment as a by-product of retaliation offending the First Amendment. Injunctive relief is prayed to mandate the basic tools needed, as indegency and isolation have compounded the needs.

9. Access to the legal library was liberal for two months just prior to May 11, 2006. Now it's back to scheduling for 2 hour visits at a time span with no overtime — 8:30am — 10:30am (library closes 10:30am). Even though noted to have

3

a request in hand and find the legal library supervisor. That is not likely, since she is Lt. Hawthorne's secretary -- Lt. Hawthorne spends much of her time at the Annex (a seperate housing unit) or ~~away from~~ Administrative Lieutenant's ~~desk~~/office. In Gluth v. Kangas 951 F. 2d 1504 (9th Cir. 1991) (hn 6)

"State Department of Corrections' policy of direct library access deprived inmates of constitutional right of access to the courts; unreasonable restrictions prevented inmates from securing adequate access to the law library in that the prison arbitrarily denied (access) request(s) for library 'turnouts' despite space available..."
(hn 6)

"It is ~~State's~~ burden to provide inmates with meaningful access to law library and to demonstrate that its chosen method was adequate." USCA Const Amend 14
(hn 7) (emphasis added)
...

"District court did not abuse its discretion in allowing inmates to request their preferred time slots in injunction requiring access to legal libraries in prisons; allowing inmates to request preferred time slots did not deprive Department of any authority over scheduling"
(hn 21)

10. It is pleaded that this Court adopt an injunction like to the one in Gluth that this pro se movant may have adequate resources and Fourteenth Amendment relief from the First Amendment violative retaliation (see Brief for more factual basis) In Shango v Jurich 965 F 2d 289 (7th Cir. 1992) meaningful access to the law library was an issue to, as also in Lewis v Casey supra, for this Court's consideration.

11. Inmate legal assistant training is the least of concern for JTP. Had it been different -- the ambiguous term "pending" might have been properly addressed saving confusion at the onset of habeas corpus for this litigant. Now, the inadequacies are stymieing. The inadequacies were told to warden Albright but not his concern (see Brief for factual basis) Her main concern is reading novels or newspapers, not assisting (not that she has any knowledge in the law). Her haphazard deliveries totally stymie any productive research in seg. Not for lack of available talent -- the best available has been placed in Health Care for job assignment. A mere suggestion of needing her back got a hostile reply. If not one talented -- a training is in order. According to Gluth:

"State Department of Corrections policy of not providing training for position of inmate legal assistant denied inmates' constitutional right of access to the Courts; Department established no qualifications for legal assistants and no training for the position, and moreover, inmate's application to be legal assistant would be approved if inmate was able to read and write -- USCA Const Amend 14."
(hn 5)

4

It bereaves efforts to proceed in a new frontier without ~~proper~~ assistance. Plaintiff suggested to the present supervisor, to the one before her and one before that; to consider welcoming law students from Jones School of Law in Montgomery or University of Alabama law students — (Auburn University does creative writing). On Monday through Thursday 6-9pm would be good for a mutually benefitting clinical assistance. It has been <u>refused</u> as an alternative. Perhaps this Court can mandate a remedy of some logic.

12. State DOC indegency policy is <u>obsolete</u>, and denies the constitutional Fourteenth Amendment right of access to the courts. This inmate is hypoglycemic — "Keep plenty of snacks on hand" has been medically advised — her meager funding does not suffice for much on other needs, <u>not to mention that</u>, but even when she manages $36 in a month its not sufficient. In Gluth, "The district court properly concluded that the Department's indegency policy, which does not allow inmates to purchase required hygiene supplies as well as the legal supplies necessary to litigate their claims, <u>is inconsistent with the constitutional requirements stemming from Bounds</u>." (Id/1508-1509)

13. Lockdown restricts <u>furthering</u> precedent — the reliance in the cause at hand is from case law notes from <u>before</u> lockdown. (Plans of a class action on the above and the <u>outrageous</u> 50¢ per page for copies) Segregation stymied affidavits and group involvement. This <u>lockdown</u> in seg has an <u>improper</u> purpose; whether in retaliation for First Amendment quoting case law in attempt

5

to remedy inadequacies <u>or</u> to thwart a class action. It <u>shouldn't</u> have to be a burden on the Court.

14. <u>If</u> the Commissioner of DOC had implemented a "monitor" system for prisons within Alabama <u>grievances</u> (such as those that aroused retaliation on this litigant) could have been remedied <u>earlier</u> on and <u>grievous actual damage</u> would have been <u>avoided</u>. An <u>overwhelming</u> amount has been <u>overly</u> spent for <u>weekly</u> monitors of JTP's <u>highest paid</u> employees.¹ A less frequent, perhaps every 2 or 3 weeks of a deputy commissioner visiting face to face for <u>grievances</u> could deter <u>further</u> harm patterns and cycles. Mailing is not an option — if it were Louisiana based inmates could do so. A <u>controlled walk through</u> the prison with <u>few</u> approaches and a glance here and there <u>does not suffice</u>. It is prayed this Court to mandate such a relief for the sake of this inmate's future efforts and for the Court's relief of burden. "The touchstone of due process is <u>protection</u> of the individual <u>against arbitrary action of government</u>." (<u>Dent v. West Virginia</u>, 129 U.S. 114, 123, 9 S.Ct. 231, 233; 32 L.Ed 623 (1889)).

15. Considering obvious alternatives to <u>destroying</u> Plaintiff's last hope in the progression of her appeal — the guise of protective custody is weak, there were too many other options for that. The retaliation begrudging this plaintiff should not go unsanctioned — the actual injury has been so <u>grievous</u> and <u>overwhelming anguish</u> to the level of Eighth Amendment Cruel and Unusual Punishment. In hindering the prisoner's efforts to pursue a legal claim, denial of legal resources. Given the history projected, such action was <u>coming</u> — as <u>spite</u>. Denial of access to legal materials has hindered litigation efforts (but <u>worst</u> of all destroyed the last level of appeal on conviction)

---
1. in face to face discussions of grievances in Louisiana prison

6

See Lewis, 116 S Ct at 2180. For an easing of the mental anguish impact and more liberal research access to Court — an injunction for release from unjustified segregation into population is prayed.

In Adams v. James, 784 F.2d 1077, 1081 (11th Cir. 1986):

> ..."Yet some expression by inmates will be found to be at the core of the protections of the First Amendment Litigations undertaken in good faith by a prisoner motivated to bring about social change and protect Constitutional rights in the prison is a 'form of political expression' and 'political association' much as the Supreme Court has held litigation to be for certain organizations outside the prison setting see NAACP v. Button, 371 US. 415, 419, 431, 83 S.Ct. 328, 330-31, 337, 9 L.Ed. 2d 405 (1963)(NAACP); In Re Primus, 436 US. 412, 428, 98 S.Ct. 1893, 1902-03, 56 L.Ed. 2d 417 (1978)(ACLU)... The right of free expression is cherished for its force as an agent of social change and not only as a right of self-interested individuals."

16. The retaliation of lock-down in the cause at hand was wantonly, willfully by Warden Albright — and in reckless disregard for this inmate's rights, in his personal spite motive retaliating on her quoting case law to show cause for acknowledging constitutional rights and finally as a last resort she had discussed with other inmates that as soon as she gets her Petition for Writ of Certiorari filed so no damage from retaliation she would pursue class action.

17. There is a very weak guise of alarm when the witness affirmed "I have no problem with her." Warden Albright's only input to implying this prisoner as "the aggressor" was a comment which projected no intimidation, no "fighting words" no implied intent to inflict injury as basis for this accused to be prosecuted by Warden Albright's arbitrary conduct. In United States Code Service (1997 Ed.); USCS Constitution, Amendment 1, n 168, (page 338):

> "Conviction under state intimidation statute is improper where speech is only act to which intimidation statute can be applied and speech did not instill fear in victim and was not accompanied by threatening gestures or intimidating acts." State v. Ferrel, 1984 208 Mont. 456, 629 P2d 224"
(emphasis added)

18. The defense of qualified immunity "'accomodates competing social interests by ensuring that officials who 'knowingly violate the law' are held accountable.'" Johnson-El v. Schoemehl 878 F2d 1043, 1048 (8th Cir 1989)

6

quoting <u>Warner v. Graham</u>, 845 F.2d 179, 182 (8th Cir. 1988). "Actual knowledge of the law is not required; if the law is clearly established, <u>the qualified immunity defense will fail unless the official 'claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard'</u> (emphasis added) (<u>Johnson-El</u>, at 1048 quoting <u>Harlow v. Fitzgerald</u>, 457 US at 818-19, 102 S.Ct at 2738-39) In the cause at hand it seems apparent that Warden Albright, Cpt. Wheeler, C. Mason, and even Administrative Lieutenant Hawthorne have a misled comfort zone in relying on qualified immunity. But in the case at hand based on the United States Supreme Court in <u>Harlow</u>, and the Eighth Circuit in <u>Warner</u> and <u>Johnson-El</u> — your Plaintiff pleads this defense should fail and they should be held accountable.

19. Lt. Hawthorne taunted this inmate on May 18, 2006, about putting her back on the list to return to Louisiana — that did not rise to such level for civil action. However, May 25, 2006, an incentive box was shipped to Plaintiff (UPS) after confirming approval with Warden Albright — having arrived on or about May 26 — this box has been withheld for an unreasonable amount of time. On June 13, 2006 Lt. Hawthorne abruptly told this litigant that <u>when</u> she is given that box is at (<u>Lt. Hawthorne's</u>) <u>discretion</u>. Because Warden Albright authorized the incentive box and he knows or should have known of this situation — it is averred as retaliation withholding to be held accountable and properly acted on. Hence, it is prayed this Court mandate release as soon as practicable, at <u>discretion of the Court</u>.

20. It is prayed that the $133 charge for copies was coerced by the authorities' refusal of 20 sheets of paper in defiance of the emphasized <u>Bounds</u> rule (supra) and that clear white paper is not available on canteen (prison store). Not even consideration of a monthly percentage deduction, creating a hardship. Had the paper been provided on January 11, 2006, the document could have been sent out for copying and forwarding in a timely manner prior to the January 16 Holiday — in the same manner preceding documents the week before. Instead, January 12 was spent collecting plain white paper from soliciting to other inmates to get legal packs (a legal pack consists of two plain white sheets, two lined sheets, and two envelopes). That day of delay was critical. It is prayed that as a by-product of retaliation/coercion the $133 charge to be ordered as stricken off.

21. It is prayed that JTP system for Prisoner's Money on Deposit is inadequate for court purposes. This Court requires a statement "showing

7

all receipts, expenditures and balances during the last six months in your institutional accounts". This has been stressed in requests, only to get a response that it is done by court standards. The "Trust Fund Resident Activity" From LCS Corrections "from 8/29/2003 to 8/5/2005" shows money received under Task Column as ROA (Received on Account), the other entries note spending. The 0 (zero) for February, March, April, May 2006; should reflect a deficit (of over $120) at JTP and $3 co-payment for Health care debit, etc. For purpose of an accurate true projection to the Court it is prayed that a proper method be implemented at JTP.

22. Cpt Wheeler is not being accountable for her position as "Seg Board" or "Seg Commander." Written requests are ignored and verbal requests are evaded, (see Memorandum Brief pp 15-16, #33-34 for factual basis) goes in the same fashion as before seg, which may require an injunction including guidelines to have the proper authority show proper follow-up. If there are any other alternatives in this depraved situation, it has not been made known. (See In Forma Pauperis Declaration Appendix F)

23. CO June Mason should be held accountable (see Memorandum Brief pp 18-19, #40-42 for factual basis) A "dorm rep" (inmate designated for communication with administration had discussed use of the containers CO Mason confiscated out of obvious retaliation on May 26 — as she did not on May 18. Same containers had been used to protect legal documents from damage for a full 5 months. Even though CO Mason was advised of Court Orders mandated to prevent destruction of petitioner's legal documents relevant to case 1:02-CV-01131-TMH-CSC (doc. 20) and "Persons having custody of the Plaintiff shall allow her reasonable access to these documents" (doc 36) As the case was still pending on May 18, 2006 CO Mason was in blatant attempt in trashing the legal papers which resulted in twenty (20) pages of the Brief/petition for Writ of Certiorari having to be rewritten on available white paper and five pages rewritten on lined paper — too crumpled from CO Mason's escapade to be presentable. Had it not been for the intervention of Lt Nelson — a repeat of April 2003 and June 2000 would have occurred. Even so, CO Mason repeated her escapade May 26. Without knowing what rules or statutes to ask for in Seg and no access to Legal Library to research — it is asked that an amended pleading be allowed on CO Mason, Warden Albright and Cpt Wheeler. But for now it is hopeful that declarative ruling can salvage a remedy for resuming the filing of the petition for Writ of Certiorari, as Fourteenth Amendment rights of due process and equal protection have been jeopardized by this First Amendment violation of retaliation.

8

24. A protective order to deter any further retaliation is prayed. Moreover, for Attorney Thomas to advise and inform JTP staff of all constitutional rights as set in detail in precedent not to be ignored or product of retaliation. He was contacted by the former legal library supervisor in January 2006 But according to Sgt Mills, June 6 2006 — all that (communication) can just be done again (about paper, copies, carbon, etc) It appears that a method of long-term impact is needed to protect constitutional rights of access to courts and attorneys — not just at whims of prison authorities and administration. There seems to be a misunderstanding of Martha Jane Johnson v. Gladys Deese, et al, as well, misrepresented as a civil action. In time past (as present) this inferred has caused unmerited suspicion and hostility. Just as Charlotte McDonald v. Frank Albright has been implied (Plaintiff assisting Inmate McDonald in a habeas corpus should not be misrepresented.) Up until disregard for access to court compromised quoting Supreme Court rules resulting in retaliation destroying this Plaintiff's last hope — there has been no actual lawsuit. If indeed the Commissioner of DOC does not provide a monitoring system for the over one thousand women in Julia Tutwiler Prison's twelve dorms, more suits will surely follow. Hence legal advise from Attorney Thomas to cease, desist the harassment of this one labeled as jailhouse lawyer to deter repitituous burden on the Court.

25. This case arose from retaliation in full bloom — causing offense to the Sixth, First, and Fourteenth Amendments to which entitles cause for requesting injunctions and declaratory relief. There has been such substantial hardship, actual damage and anguish as a result, to the extent of Eighth Amendment consideration. Release from the restrictive confines of unmerited unjustified segregation is most pressing. Adequate scheduling for research of two hours minimum visits to legal research and ten hours minimum per week (liking to adopt the access injunction in Gluth at 1511, text relating to headnote 20 comparative) with adequately trained or skilled legal clerk — granted that this Court grants a remedy of the state

9

created impediment — so that Due Process and Equal Protection can resume — to recover from a devastating setback. An amended complaint is prayed as in order — by the fact that inadequacies of lock-down has hindered certain aspects here.

26. It is averred here that an unfavorable ruling would be condoning such conduct as suffered here.

> " " " To permit (retaliation) of this character to stand upon such (arbitrary action) would be unconscionable. It would be an exceedingly dangerous precedent ... to deprive (plaintiff) of (her) liberty and brand (her) as (an aggressor) before the world. If such were the law, every citizen would be at the mercy of an enemy who by merely surreptitiously ... of (her) enemy could wreak his vengeance through the aid of the law in this dastardly manner. The law contemplates no such condition, nor will the Courts countenance such a thing ... conjectures, suspicions, hatred, prejudices, conclusion and guesswork have no place in the proper administration of the law; and to willfully hold otherwise would do violence to the conscience of the person doing so, be he judge ... officer or witness. ' " "

Goodloe v. State, 783 So.2d. 931 (Ala. Crim. App 2000)(interior cites omitted here)(emphasis added)(parenthesis added with wording change for clarity and emphasis)

## CONCLUSION

Whereby your plaintiff humbly and respectfully prays this Court grant relief in whole or in part as deemed proper and appropriate to have arbitrary retaliation put in check and corrected; to remedy grievous actual damage; as well to protect from further violation of Constitutional Amendments by injunction, declarations, and allowing for amended complaints for recovery and punitive compensatory anguish; to deter further impediments on access to court and dissuade imminent retaliation.

Respectfully submitted,

*Martha Jane Johnson*
MARTHA JANE JOHNSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing has been caused to be served on the Defendants as depicted at the end of the supporting memorandum brief accompanying this motion.

*Martha Jane Johnson*
MARTHA JANE JOHNSON

10