IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DISTRICT

2006 SEP -8 A 9:59

MARTHA JANE JOHNSON #202230,
 Plaintiff,

v.                                              CIVIL ACTION NO. 2:06-CV-546-WKW

FRANK ALBRIGHT, et al,
 Defendants.

## PARTIAL ANSWER TO ORDER

COMES NOW, your plaintiff, MARTHA JANE JOHNSON, in the above-styled cause, in partial answer to this Honorable Court's order of August 18, 2006, and in partial response in opposition to the written report and supporting evidentiary materials filed by the defendants, submits:

IN ANSWER TO DEFENDANT'S ANSWER (14 day)

1. Defendants have hindered and/or obstructed much of the proof of plaintiff's issues by having Plaintiff transferred to the Annex which has substantially isolated her from certain witnesses, yet there are at least three affidavits accomplished in opposition.

2. The supportive on point case law submitted in the documents accompanying the Civil Action has similar analogy that supports factors of violations of constitutional rights, as well as <u>history</u> of arbitrary conduct still <u>ongoing</u> in spite of the provisions in such precedent.

3. As stated, and supported in the supporting documents filed with the Civil Action on point — that the affirmative defense of sovereign, qualified and absolute immunity is void in this case.

4. Recall of Rule 9 is that any "material allegation" not rebutted by the Defendants is considered true. Restricted access to legal research does not provide access to the rules at this time to confirm actual rule and wording.

---

1. Hindrances to complete reply referred in accompanying Motion to grant leave for additional pleadings and opposing affidavits and for ORDER to arrange notarized statements and copies at state expense.

OPPOSITION TO "ARGUMENT IN SUPPORT OF DISMISSING THE PLAINTIFF'S COMPLAINT (Id.#1-10, pp 5-6 of the DEFENDANT'S ANSWER) AS "PLAINTIFF'S ALLEGATIONS"

Admitting that plaintiff's allegations are indeed disorganized and convoluted — obviously overwhelming emotional distress taking toll. However, some of Defendant's interpretation will be recapped:

1. As to "she could not file a <u>writ of certiorari</u> because she was placed in protective custody." The <u>actual damage</u> evolved from a ripple effect derived from events referred in the Plaintiff's memorandum brief.[2] The torpedo was by Warden Albright's deliberate indifference to the Plaintiff's emphasizing that her appeal was at a <u>critical stage</u> (MB, 13-14), and pleading that Annie Bell Morse be confined first. (There were other options like Louisiana for Annie Bell, or Annex for Martha). This action <u>began</u> the bombardment of direct impact and <u>obstruction</u> of the <u>writ of certiorari</u>. (On May 18)

Also, on May 18, 2006, Officer Lacey thoroughly screened and plundered through the plaintiff's papers (MB, 18). The actual damage <u>rippled</u> by Officer J Mason <u>cramming</u> the supporting brief for the <u>writ of certiorari</u> into garbage bags causing <u>crumpling</u> destruction — and again on next opportunity May 26, 2006 — <u>despite</u> Lt. Nelson's supervisory concern for access to court (MB 18), violating the First and Fourteenth Amendments (MB 19). Refusal of paper and carbon

---

2. hereafter referred as (MB ___) with <u>page number</u>

2

on that Friday May 19, 2006, paper and carbon was refused. (This refusal <u>obstructed</u> carbon duplicates) (MB15) The last resort of invoking the rule of indigent copies based on current Prisoner's Money on Deposit Zero (0) balance since January 18, 2006 — also obstructed (MB15). <u>Further unexplained</u> restrictions by placing Plaintiff in Segregation on May 24, 2006 (MB15) — and requests for salvaging evaded or ignored (MB15-17) All of those actions contributed to a state created impediment (MB20) as described further in Conclusion (MB20-22) and throughout the Memorandum Brief and Motion... OF ACTUAL AND IMMINENT DAMAGE AND SUBSTANTIAL HARDSHIP.

2. The other listed "complaints" are covered — except for Defendants' referral as "Page 6 (Plaintiff's complaint)... out of retaliation for the <u>lawsuit she has previously filed</u>," and as "Page 8 (Plaintiff's complaint); June Mason destroyed her legal documents as a form of retaliation for her <u>exercising her first amendment right to file previous lawsuits</u> (Id p3) (emphasis added). Error by defendants' wording is also in referral to "claim 9 — Page 6 (Plaintiff's complaint); She is being denied access to various materials out of retaliation <u>for the lawsuit she had previously filed</u>" (Id p5)(emphasis added). Error also in wording "Claim 11... June Mason destroyed her legal documents as a form of retaliation for her exercising her first amendment right <s>to file previous</s> "lawsuits"

3

(Id, p 6) Although this plaintiff frequently used the term "retaliation" it was not stated as related to "previously filed" lawsuit as implied by the Defendants' answer. It was referred to in Plaintiff's Motion[3] as (in #16, p 6):

> "The retaliation of lockdown in the cause at hand was wontonly, willfully by Warden Albright—and in reckless disregard for this inmate's rights in his personal spite motive retaliating on her quoting case law to show cause for acknowledging constitutional rights and finally as a last resort she had discussed with other inmates that as soon as she gets her Petition for Writ of Certiorari filed so no damage from retaliation she would pursue class action."

Also in past history although past statute—still shows long-term pattern (MB 11-15) This pattern continues despite the Plaintiff quoting United States Supreme Court precedent, provisions, and rules as established.

As to Defendants' Answer referring to "Page 7 (Plaintiff's complaint)" "she wants a $133.00 copying charge stricken from her account" (Id p 3) Plaintiff's Motion (p 7) shows cause; not merely "stricken," as:

> "It is prayed that the $133 charge for copies was coerced by the authorities' refusal of 20 sheets of paper in defiance of the emphasized Bounds rule (supra) and that clear white paper is not available on canteen (prison store). Not even a consideration of a monthly percentage deduction, creating a hardship. Had the paper been provided on January 11, 2006, the document could have been sent out for copying and forwarding in a timely manner prior to the January 16 Holiday--in the same manner preceding documents the week before. Instead, January 12 was spent collecting plain white paper from soliciting to other inmates to get legal packs (a legal pack consists of two plain white sheets, two lined sheets and two envelopes). That day of delay was critical. It is prayed that as a by-product of retaliation/coercion the $133 charge be ordered as stricken off."

(See also supporting memorandum brief (MB 7-8)

The United States Supreme Court in Lewis V. Casey, 518 US 343 (1996) and Bounds V Smith, 430 US 817 (1977) and numerous circuit federal

---

[3] Plaintiff's Motion is used to refer to "MOTION SEEKING URGENT INJUNCTION AND DECLARATORY RELIEF OF ACTUAL AND IMMINENT DAMAGE AND SUBSTANTIAL HARDSHIP, BY MANDATE OR OTHER ACTION"

4

courts as quoted and/or cited in the two supporting documents which this Plaintiff filed simultaneously with the immediate civil action.

It is strongly asserted that the above and foregoing excerpts were included for emphasis and clarity (or attempt to do both). However, the other "Plaintiff's Allegations" listed by the Defendants (Id, Defendants' Answer pp 3 and 5-6)[4] are believed to be covered in the Plaintiff's two supporting documents and opposing affidavits with (following this page) discussion thereof.

In other than "Access to Court" whereas the 31 (thirty-one) days in Segregation was not provided with "adequate law library," hence there should have been "adequate assistance from persons trained in the law" (cites in Defendants' answer (Id, 6) (also Id 7)) (particularly but not limited to ¶¶ 9, 17, and those enumerated in Defendants' Answer (Id, 7) and Plaintiff's Motion additionally (pp 4-5); not waiving the related arguments in Plaintiff's two supporting documents to be incorporated here. Moreover, the actual injury in the immediate issues is that this Plaintiff's appeal efforts were torpedoed by the Defendants and/or their designated agents.

I. <u>The Plaintiff could not file a writ of certiorari because of numerous interferences referred in her two supporting documents</u>

Four sheets of paper is <u>hardly</u> sufficient to write supporting documents, therefore Defendants' referral to such provided is without merit. The two "FREE legal letters each week" is not sufficient to accommodate briefs, motions and other documents too large to fit in regular envelopes

---

4. referred in foregoing and following to Plaintiff noting of Defendants' Answer as (Id, __) with <u>page number</u>.

5

Paper alone was not the only obstruction asserted by this Plaintiff as obstruction of access to court. The blunders of the legal clerk inmate not having even knowledge to locate certain books were emphasized. Notary services not provided and other obstructions were argued.

First to oppose Warden Albright's unfounded allegation of "open threats" as if made by the plaintiff towards Inmate Annie Morse. Conveniently officer Damon Tucker was not made available to say otherwise. Isn't it unusual for the witnessing officer not to be included? However, an inmate that was present at the time of Annie Morse's outburst has provided an affidavit (Plaintiff's exhibit A) to corroborate opposition to such unfounded allegations. Ms McIntyre stated that Annie Morse did the outburst and persisted with complaining until Officer D. Tucker called to the shift office. Melissa McIntyre stated that because Annie was so agressive, she thought a dorm change was about to happen. She stated that it was a shock to find out that Martha had been put in isolation, because Annie was the one that was loud. Moreover, "Martha did not make any threats of any kind to Annie Belle. Martha did not raise her voice. It was Annie Belle that was loud and hostile. According to this observation, the unfounded allegation of "Plaintiff was placed in protective custody <u>after she threatened another inmate.</u>" is challenged to be proven. It is strongly averred that Officer D. Tucker is expected to corroborate Ms McIntyre's observations — when a <u>notarized</u> statement can be arranged. Plaintiff did not "<u>request to be placed into protective custody</u> and then claim that protective custody caused her difficulty in filing legal documents" as alleged by Defendants (id, 7)

As Judge C. Coody phrased in a hearing on October 17, 2005 we can "check credibility." Mrs. Peggy Jones Affidavit (Plaintiff's Exhibit B) contradicting Warden Albright's allegation, "If a problem existed concerning an incentive box that was allegedly

6

mailed to Inmate Johnson, Inmate Johnson did not make me aware of it." Peggy Jones had talked to Warden Albright three times about concerns of the Plaintiff of the box approved and of it being held after sent. Peggy also attached a UPS shipment receipt as documentary evidence (Defendant's Ex B has Warden Albright's statements). Defense Counsel's Answer and Special Report claims that, "Martha Johnson <u>did</u> <u>reject</u> an incentive box, however, while she was in segregation ((Id, 10) (Ex F)) When, in fact <u>IF ANY UNAUTHORIZED ITEMS ARE IN PACKAGE</u>, I AUTHORIZE TUTWILER TO DO THE FOLLOWING: RETURN ENTIRE PACKAGE TO SENDER." That decision had to be made prior to opening and if one item was not on list — <u>then</u> returned to sender. However, on June 20, 2006, the day that the defendants were served by certified mail, the box was delivered and inventoried to Plaintiff.

   Now that a question of accountability or credibility is aroused — it is challenged that no threats were made directly or indirectly by Martha Johnson to Annie Morse, those allegations are false and challenged to be proven otherwise to all allegations in Defendants' Exhibit B.

   The plaintiff was released on Saturday June 24, 2006, after Cpt Wheeler noticed on Friday evening that this prisoner was still in segregation. As to availability of bed space — if <u>indeed</u> rotation was planned — when Annie Morse left <u>that</u> bed space should have been Martha Johnson. Delay into general population was without merit — as was placement in segregation — pulling Inmate Candace Dingler from segregation 18 (eighteen) days early to move this prisoner from Dorm 5. The second page of (Def's Ex B)

7

Mr Albright's allegations claims that, due to Inmate Johnson being so agressive and making the initial threats, it was decided that Inmate Johnson <u>would be placed in the restriction dormitory</u> on May 18, 2006. It was further determined that Inmate Morse and Johnson <u>would swap from dorm #5 restriction dorm and Dorm #9 every 4 months</u>"

It indeed seperation was a concern and not <u>retaliation</u> in deliberate defiance of the First Amendment, either Martha Johnson or Annie Morse would have been placed in Annex then — not two months later to isolate from witnesses. <u>If</u> Mr Albright had even checked Annie Morse's record as he alleged in claiming a medical hold as cause for not sending to Louisiana, then the brief stay was also obvious to <u>no</u> four month rotation to be likely.

A statement from Cpt Timothy Hewlett is expected to confirm that <u>no</u> notary was made available during Martha Johnson's segregation stay — to opposition of Mr Albright's allegation of such made available.

As to Defendants' "VI The Plaintiff's Legal materials were allegedly confiscated (claim II)" (parenthesis in Defendants' text). Officer June Mason confiscated her legal papers on May 18, 2006, an affidavit to be arranged of Lt Nelson and Sgt Nearer is anticipated to corroborate the May 18 confiscation and disgruntled C.O. June Mason on having been told by Lt Nelson that the papers were not excess paper but access to courts. Meantime, an affidavit by Inmate Angela Hudson (Plaintiff's Exhibit C) is provided to corroborate Ms Masons actions on

May 18, 2006 — after several hours of Officer Lacey screening the documents upon entry into Restriction Dorm #5. — Ms Hudson observed Ms J. Mason "went to Martha's living area and crammed all of Martha's papers in two garbage bags in spite of Martha telling her that she had a court order to prevent destruction of her legal documents and another court order to allow Martha access to those legal papers." Ms Hudson's affidavit conflicts with opposition to Ms June Mason's affidavit. Moreover, that Ms Hudson (and other inmates) fed up by May 23, 2006 had asked Martha what to do and after May 24 hoping to get salvaged on filing legal papers to discuss others' problems and possible solutions. This plaintiff avers strongly that the more likely cause for transfer to segregation of the plaintiff by Warden Albright was to seperate one basically knowledgeable in the law from those needing help.

It is anticipated that Officer Corbin and Officer Morgan can corroborate that Martha Johnson frequently had her papers out on the floor in segregation working on legal notes — rather than (Defendant's Exhibit E) not clean and cluttered, lying all over the floor posing a safety hazard. Mina Corn, inmate in Seg Cell 7 overheard most of Ms Mason's comments — but an affidavit has been made not possible by isolation of plaintiff in the Annex. There was no "attached duty post log dated 5-26/2006" in the Plaintiff's copy of Defendant's Answer and Special Report. The cereal bags were not all empty — papers had been taken out of some to review legal notes.

9

when officer June Mason <u>crammed</u> the legal papers into garbage bags, crumpling the supporting brief for writ of certiorari; this was the <u>most devastating actual damage of all</u>. When paper and carbon was refused until May 23 (to rewrite in a timely manner) and <u>no arrangements honored</u> on May 24, 2006 for last minute copies.—all hopes of timely filing of Plaintiff's Petition for writ of Certiorari was torpedoed. Now, while waiting on the procedures of this civil action—other petitions being filed making the waiting list longer. Four orphaned grandchildren need their grandmother. A youngest son has grown up—will be graduating May 2007—the devastation and mental distress is overwhelming with this interference by the Defendants bombarding a last hope.

As to Defendant's Exhibit G, Captain Wheeler truly did not play a role in the process of Inmate Johnson being placed in protective custody. The coercion of copies made in prison was not the only complaint made on Captain Wheeler. It appears that Cpt Wheeler did not rebut or oppose the other complaints to the state created impediments of access to court.

(1) Cpt Wheeler <u>evaded</u> requests on confrontations numerous times in restriction dorm and May 26, 2006, in Seg & June 2, 2006, in seg. (Plaintiff's motion, 3) These blatant roadblocks have destroyed due process and equal protection of the law in violation of the Fourteenth Amendment, as a by-product of retaliation offending the First Amendment. (Id p 3)

(2) Cpt Wheeler is not being accountable for her position as "Seg board" or "Seg Commander". Written requests (were) ignored

10

and verbal requests (were) evaded (see Plaintiff's Motion at 8, and MB pp 15-16, #33-34 for factual basis to be incorporated here) In spite of Friday May 26, 2006, Plaintiff quoting U.S. Supreme Court's Bounds rule headnote 18 to Cpt Wheeler about paper and copies, Cpt Wheeler advised to put in a written request — no follow up was done. (MB 15)((were) added here)

(3) On June 2, 2006 "Seg Board" Plaintiff pleaded and stressed urgent (to Cpt Wheeler) and that written request had been placed. Cpt Wheeler's excuse was that her secretary is gone now. She did not follow up when her secretary was here (MB 16) She assured this prisoner she would get a notary and get it done. As the pattern of deliberate indifference continues — still no follow up. (All issues in MB and Plaintiff's Motion to be incorporated here on all defendants)

Commissioner Richard Allen was not named as defendant merely because he is the "Prison Commissioner" as implied in Defendants' Answer (Id, 12). Direct claims have been made and supporting case law given. With respect to brevity that portion of the Plaintiff's Motion and her supporting memorandum brief is prayed to be incorporated here as well as case law relied on throughout the brief from beginning to end and in Plaintiff's Motion. Truly, had the commissioner enacted a form of monitoring arbitrary conduct the actual damage impact could have been avoided. Eminent problems in the future access to court would be discouraged and some prevented. As it stands now a flooding of civil action is projected and beginning with harassment of a jailhouse lawyer as well as gender and racial discrimination in addition to numerous functionally illiterate inmates as well as average filing on access to court later on when complications and delays in appeal pursuit not a factor.

11

otherwise conduct such as oversight of only one other inmate researching as scheduled the week of August 21-25, 2006; when Warden Albright restricted this prisoner to one and a half hour visits for research three days for a total of 4½ hours scheduled for that week while the only other inmate utilizing the research was Tara Belcher, a woman of color — all 5 days of the same week averaging 3 hour visits daily. A sworn statement to be arranged with the two inmate legal clerks, Peggie Adams and Christy Self would corroborate such imbalance and provide contradiction to Warden Albright's allegations that only two hour visits given to all inmates to accomodate so many others. Before the overcrowding lawsuit when approximately 1200 inmates shared the same space, visits for research were scheduled for this plaintiff consistently every Monday and Wednesday 12-4:30pm — then when less than four inmates researching at a time, extra time was granted on any day. One and a half hour visits are inadequate — however with lack of monitoring there's no hope.

    Abuse of discretion goes on when a contracted prison is told that <u>materials</u> and <u>equipment</u> in the law library is to be <u>provided</u> for <u>civil action</u> as access to court while the same authority <u>prohibits</u> such use on his own turf.

    Requests continue to be evaded or ignored without a system of monitoring — opening flood gates for lawsuits.

    Correctional officers behave in irritational manner such as Officer J Mason plundering and destroying goes unchecked (see MB, 18.-19; Plaintiff's Motion, 8)

    Deprival of basics such as paper continues by order of an obstinate opinionated authority such as in the retaliation on September 1, 2006 (earlier in this response) and

January 11, 2006 abrupt deprival for first time in eight years of incarceration — such basics as paper and ~~adequate~~ postage and pens continue (Plaintiff's Motion, 1-10)(MB 1-22) as overall abuse of power grows more impact on access to courts, so will lawsuits to desperately seek relief and/or remedy for salvaging resulting defaults — by this inmate and others she has discussed with. The United States Supreme Court and the Eleventh Circuit has previously recognized harassment of a jailhouse lawyer, that may well be next on the agenda.

As to hindrance, Inmate Wendy Congo could do a sworn statement on this inmate's assistance achieving 99 years reduced to 15 split 3, and Inmate Katrina Orum (recently transferred to Louisiana) could do a sworn statement to this inmate's assistance achieving her release less than 4 months after starting process, and to salvaging Inmate Katrina Orum's parental rights. Four others in the main camp of Tutwiler Prison are devastated by seperation in this inmate's recent transfer to the Annex. Yet Warden Albright ~~intimidates~~ even suspicion of discussion of an inmate's confusion on time and procedure of a trial level habeas corpus such as the conduct August 25, 2006, discussed earlier in this response. Such behavior would have been discouraged with a system of monitors liking to that Department of Corrections Commissioner position has spent easily close to a million dollars in expenses and overtime of Tutwiler's six most highest paid positions. To condone this inequality is violative of the Fourteenth Amendment Equal Protection and inherently the Due Process Clauses. To condone retaliation is violative of the First Amendment. To obstruct access to Court is violative of First, Sixth and Fourteenth Amendments.

13

## CONCLUSION

To the best of her ability and limited means, this plaintiff has pleaded and supported opposition in her response. An ORDER is prayed for to arrange more sworn statements at state expense, since the effective seperation by transfer has achieved isolation from witnesses—therein obstructed much needed evidence to submit. Otherwise there is an imbalance of adversarial production. Relief is prayed as this court deems appropriate—particularly, but not limited to an official document produced to establish that a state created impediment is the cause for default to have leave granted for out-of-time Petition for Writ of Certiorari to the United States Supreme Court as proper in respect to the First, Sixth and Fourteenth Amendments.

Pursuant to 28 USCA. §1746(2) I declare that the foregoing is true and correct. Executed on September 5, 2006.

Respectfully Submitted,

*Martha Jane Johnson*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been caused to be served upon the counsel of record for the defendants, particularly originals of the documentary evidence, affidavits; with the text of the response partially transferred with pencil or charcoal method and written over in ink (pages 1-6) and remainder by carbon paper—as to utilize what is available (rather than "write as many times as needed like writing 100 times in school" as dictated by Warden Albright; by placing in the prison mailing system with first class postage attached and properly addressed this 5th day of September 2006, to:

Hon. Betty J. Cormack
Assistant Attorney General
Civil Division
11 South Union Street
Montgomery, AL 36130

*Martha Jane Johnson*
MARTHA JANE JOHNSON 202230
Julia Tutwiler Prison Annex, Dorm 12
8966 US Hwy 231
Wetumpka, AL 36092-5343

14