IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARTHA JANE JOHNSON 202230,
Plaintiff,

v.

FRANK ALBRIGHT, et al,
Defendants.

CASE NUMBER: 2:06-CV-546-WKW

MOTION REQUESTING LEAVE OF COURT FOR NECESSARY
MOTION FOR PROTECTIVE ORDER OR WHATEVER DEEMED APPROPRIATE
TO DETER REPITITION OF SUCH CONDUCT OR COMPARABLE CONDUCT BY OTHERS

COMES NOW, the plaintiff, MARTHA JANE JOHNSON, pro se, in the above-styled cause to humbly and respectfully move this Honorable Court for protective ORDER or whatever deemed appropriate to deter repetition of such conduct or comparable conduct by others and for good cause shown would submit:

1. The basis of this pending lawsuit being contempt of court by destruction and deprivation of legal documents prejudicially obstructing due process in spite of movant's good faith effort to confer with other affected parties in effort to resolve the dispute without court action as the action pending then was protected by ORDER of July 8, 2003 (document #20 in case # 1:02-CV-01131-TMH-CSC) "Construing motion for court order to expeditiously order discovery to avoid further prejudicial destruction of evidence for effective factual development as a motion for discovery and motion to prevent the destruction of her legal documents... granting [18-1] motion to prevent the destruction of the petitioner's legal documents to the extent the petitioner requests that the defendants discontinue the destruction of petitioner's legal documents which are in their possession and relevant to this case. (Signed by Mag. Judge Charles S. Coody)" (Source; CIVIL DOCKET FOR CASE # 1:02-CV-01131-TMH-CSC)(hereafter "CIVIL DOCKET") (elipses added here for brevity)

2. This Honorable Court also provided, "Persons having custody of the plaintiff shall allow her reasonable access to these documents. Signed by Judge Charles S. Coody on 3/2/2005" (Source; CIVIL DOCKET @ Document #38) Repitition of such conduct or comparable conduct by others similarly situated make it necessary for movant to request intervention again.

3. Annoyance, embarassment, oppression, undue burden, and expense as products of retaliation have been long term tolerated by the plaintiff. But now, again, destruction of documents and research case law notes pertinent to the cause at hand and contemptuous arbitrary refusal of reasonable access to the remainder as salvaged is obstructing access to court on this case and a potential lawsuit that evolved from unreasonable actions of the defendants and counsel for defendants.

4. Repition of such conduct or comparable conduct by others similarly situated are such under the directive of Defendant Albright. On Thursday, August 7, 2008, approximately 7:00 am or shortly after, Sgt. Monica McCoy, working overtime in the capacity of Correctional Officer entered Dorm G hollering, "I'm not going to have this bullshit, you can play crazy if you want to, mental health dorm, but not today." Turning to the plaintiff demanding drawers emptied, demanding "trash" to all papers that didn't have attorney or court heading. of loose handwritten notes including documentation of dates and times of ongoing harassment notes and handwritten notes on recall of mandate and appeal court opinions on two DOC contracted psychologists' opinion as not reliable as one only one hour, the other two times of one hour each which have not been recovered and can not recall cites.

5. Plaintiff insisted that the research notes were relevant to the pending lawsuit and a potential lawsuit in consideration as well as to the challenge on the conviction which is the basis of both lawsuits. "That's what you have law library time for legal research,"TRASH!" Assuring the plaintiff, "no one will be reading any of it, going straight to main dumpster." Refusing to allow tearing up any of the personal notes. Two bottles of shampoo, because label had been removed (no rule against removing labels is known of), a new scrabble dictionary, a second pair of eye glasses in the garbage—even though receiving list includes two pair of eyeglasses. Although two Bibles are included on the list only one Bible allowed to keep. Demanding all contents of laundry bag

2

emptied, taking two bras as only six allowed had eight, any over six socks, and two plastic containers without allowing to check contents "everything in them goes." Some envelopes dated June "over 30 days, trash," had documents for court, but were originals and copies mailed in by outside contact -- but because envelopes postmark over thirty days and no attorney or court return address "Trash."

6. Slurs being made about not organized were not acknowledging that such due to a "major dorm shakedown" the night before had plundered contents of all inmates' living areas in the dorm -- not yet reorganized. Sgt. M. McCoy spent from about 7:10 am to about 8:50 am plundering and trashing. For some unknown reason she actually salvaged some items in a box that she had asked Officer Davis to get for her. Two boxes underneath the bunk with legal documents and documentary newspaper articles and research notes were thrown on a flat bed cart along with the garbage bag and placed in the hall.

7. The plaintiff got Cpt. Hawthorne and told her about the raid and confiscation by Sgt. McCoy. Cpt. Hawthorne consulted with Warden Albright and subsequently locked the three boxes in the room that was formerly arts/crafts, now used for storage. Later on Cpt. Hawthorne ordered the plaintiff to find an active case number within fifteen minutes, emphasizing no removal purpose or access other than locating an active case number. The resulting written response is attached as "Appendix A"

8. It has come to the attention of this plaintiff that next week most likely destruction of the contents of the two boxes are intended. Several verbal requests are brushed off by Cpt. Hawthorne. Written requests are attached as Appendixes B, being one of many.

9. Warden Albright, when asked, said he has assigned Cpt Hawthorne to that issue. (Destruction of legal papers most likely week of Sept 8, 2008.)

3

10. Among the legal documents that were in the two boxes underneath the bunk are hopefully some research notes that were not "TRASH," or destroyed. Some most valuable notes on recall of mandate and brevity of two DOC contracted psychologist not acceptable in comparison to "comprehensive" or "full blown" Taylor Hardin evaluation were trashed, and no recall of cites to recover.

11. It is emphasized here that since August 7, 2008, only one time opportunity of ten minutes, on Tuesday August 12, 2008, with Sgt Ferrell observing retrieval of a minimal of notes -- under stress to hurry up not able to sort through contents and discern location of instant issues. One time of two hours is hopefully acknowledged as contemptuous of "reasonable access" in a period of four weeks. Hence, a specific stipulation of time is needed as well as frequency.

12. As comparable conduct in destroyed documents is the basis of the pending lawsuit -- it is strongly prayed that access to Court needs protection of this Court -- relevant to this case is in fact the challenge of the plaintiffs' conviction and sentence. The defendants insist on an active case number required to keep <u>any</u> paper. Any (1) lawsuit potential on the Alabama Department of Mental Health and Mental Retardation for gender discrimination by comparison of "full blown" "comprehensive" evaluation with extensive expert testimony disparity to no equal protection of the law or due process for women has had a prejudicial impact on the challenged conviction; (2) notes on legal research that were in the two boxes with documents of all state and federal levels are prayed to be protected, not only on the appeal, but the pending lawsuit, potential lawsuit, and lawsuits potential on Alabama Dept. of Corrections (DOC) for gender discrimination

4

of which documentary newspaper articles have been saved for factual corroboration -- which could be avoided expense and time of litigation if DOC implemented a monitoring/grievance system as mentioned in the pending lawsuit (2:06-cv-546-WKW). Although twenty-six months ago this was presented to the Commissioner (Defendant Richard Allen) by service of the supporting memorandum brief making him aware -- no corrective action taken to prevent ongoing comparable conduct, oppressive mental anguish and distress at hand of arbitrary conduct, and evolving in repetitive destruction and deprivation on August 7, 2008, continuing unless an ORDER is granted to have specific stipulations while awaiting process on the lawsuit.

13. All that has been accomplished by filing the civil complaint thus far is increased intimidation/retaliation and over two years extension on delay of filing Petition for Writ of Certiorari which was destroyed by contempt of court; deliberate disregard for access to Court on May 18, 2006. As by Sgt. McCoy's destruction of case law on recall of mandate and mental evaluations rejected on brevity inadequate torpedoed certain issues -- and destruction of documentary notes of dates times and details of ongoing harassment hinders the factors of the lawsuit -- unless this Court recognizes a need for intervention there is no relief in sight. Plaintiff managed to stash a copy of a complaint ignored by Warden Albright (July 29, 2007 deposited in his request box in main building Central hall -- attached as Appendix C). In that, quoting Ms McCoy "not even Jesus Christ can stop (her)". That became evident August 7, 2008, and furthered at directive of Warden Albright's instructions through his designee, Cpt Hawthorne, locking in storage all papers that were not destroyed by Sgt. McCoy -- no reasonable access acknowledged other than ten minutes to retrieve an arm full one time in four weeks.

14. On July 14, 2008, Warden Albright approached the Plaintiff at approximately 2:50 pm demanding legal papers located at space between wall and head of bunk be moved. For documentation, Plaintiff started

5

to write "2:50 pm", interrupted by his, "You writing on me, you'll do it from jail!" CAPTAIN!" then he left. Plaintiff proceeded to move the stash of legal papers. Shortly, "Martha Johnson to Captain's office," caused hastily stashing where possible, to hide lawsuit brief and documentary notes between matt and bunk frame until return -- to hope to protect from destruction (July 14, 2008).

15. Cpt. Hawthorne asked to see the Court orders about access and destruction. The plaintiff produced CIVIL DOCKET FOR CASE # 1:02-CV-01131-TMH-CSC, pointing out 7/08/2003 #20 ORDER and emphasized final clause, "to prevent destruction of the petitioner's legal documents" and 3/02/05 #38 "reasonable access" also pointed out.

16. Cpt. Hawthorne took the DOCKET, "to make a copy for the Warden," even though former warden Gladys Deese (and then Deputy Warden Albright) had acknowledged service of copy by the Court (to be retained for future reference)(at time ORDER was served). However, instead of a two-minute copy process -- well over an hour (documentation notes TRASHED -- so not exact on recall). It is safe to speculate that was faxed to an attorney -- when returned the front cover page had been ripped and crumpled as in ripping staple off, perhaps.

17. While waiting, Cpt. Hawthorne ordered plaintiff to return to her dorm (where C.O. Lacey was waiting with a digital camera. C.O. Lacey ordered all contents of drawers exposed and had all papers to be spread out in one layer on bunk -- still in cereal bags (used to protect papers), so all that was photographed was a layer of cereal bags. Then ordered to empty all contents of laundry bag and unfold each and every crevice of clothing and socks -- but no contraband found for excuse for any creative reason to add a disciplinary, so she left.

18. The night of May 18, 2006 Lt. B. Nelson had Sgt. Nearer get two more boxes to store legal papers in (one box already in Shift office), so again two boxes (used to contain 4 gallon sized jugs each (5 size) were

6

just right and sufficient until Sgt. McCoy's raid on August 7, 2008. Accomodations change at whatever _whim_ of _whatever_ officer.

19. Attached as "_Appendix D_" is a request that was made upon transfer from Annex to Tutwiler main building on July 2, 2008. The papers could have been _amply_ contained in the _available_ vacant bunk's two largest drawers -- _one_ of those drawers would hold _all_ of the contents of the two smallest drawers, with space left over. But with wanton spite, the assigning officer had an inmate moved from a bunk with smallest drawers -- to create a hardship in containing legal documents and notes. She even _snarled_ "ship the paper home!" With the exception of May 2006, over the last nine years numerous legal documents and notes considered "excess paper" has been contained in large drawers and/or lockers.

20. On the night of May 18, 2006, when Lt. B. Nelson called the movant to the shift office (where C.O. Mason had stashed/crumpled all paper into two trash bags and left there) Lt. Nelson allowed however much time needed to sort and reorganize -- close to four hours -- now that time for _one_ time to collate according to level of appeal and relevance to lawsuits would be helpful (three boxes were used then, too) Afterwards 10-15 minutes to swap out notes or documents each day -- if the Warden _insists_ on keeping all locked in storage instead of living area as has been for nine years (until creative retaliation prevailed).

21. If this Court doesn't stipulate "reasonable access" _and_ prevention of destruction of case law notes, documentary notes, as well as documents -- with or without "active case number," prejudicial destruction of all papers is close at hand. Surely the officials/defendants are aware that the trial court number of the case as well as appellate case numbers are _not_ required to be "active" _but_ that is being made an excuse to destroy or dispose of such. The arbitrary harassment will inevitably continue without an ORDER to deter such.

7

## CONCLUSION AND REQUESTED RELIEF

It is prayed that with consideration to "prevent destruction" any further (until resolution of pending lawsuit) and to stipulate "reasonable access" as well as to deter ongoing overwhelming mental anguish and distress from ongoing retaliation harassment and "creative ways to make miserable" going unchecked that an ORDER be granted to stipulate

(1) Such retaliation harassment cease and desist as such;

(2) Access to Court be recognized and destruction forbidden of case law research; handwritten notes utilized for such research and documentation of pertinent issues maintained; all documents of trial court, state appeals, federal appeals, etc of conviction and sentence; all documents of pending and potential lawsuits of civil action pursuant to 42 USC §1983; as all are access to court;

(3) Ongoing harassment and annoying intimidation to cease; not only of the plaintiff but to rumors being spread that participation in affidavits corroborating harassment cease. Creatively two affiants were transferred shortly after mention to Cpt Hawthorne to consult with them as to how much charged (see Appendix B) with exception of the third mentioned as LWOP (life without parole) not possible. Inmate Linda Knight had attempted to have affidavit notarized; CO Brown" refused to notarize an affidavit by one inmate for another", so for that day all discouraged, now Linda is relocated to annex — isolated from participation (creatively). Those tactics cannot be avoided — but surely harassment and intimidation for exercising a Constitutionally protected right can?

WHEREBY, it is prayed that this Court grant leave of Court for necessary ORDER or whatever appropriate to deter repetition of such conduct or comparable conduct by others; in whole or in part to grant relief.

Respectfully Submitted,

*Martha Jane Johnson*

8

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been caused to be served upon Counsel of Record for the defendants, by entrusting original to outside Contact person for copying and forwarding to be properly addressed and placing a copy of same in the United States Mail, postage prepaid and properly addressed as follows to:

Hon. Betty J. Carmack
Assistant Attorney General
Civil Division
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130

Although this package is being placed in the prison mailing system on September 2, 2008, it is to be completed by outside Contact with date of forwarding by placing said copy in the United States Mail on September 5, 2008.

Martha Jane Johnson
Martha Jane Johnson 202230
Julia Tutwiler Prison G1-28A
8966 US Hwy 231
Wetumpka, AL 36092

9

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNSWORN DECLARATION UNDER PENALTY OF PERJURY
FOR JOHNSON v. ALBRIGHT et, al.    CASE NO.: 2:06-CV-546-WKW

My name is Martha Jane Johnson. I am an inmate currently housed at Julia Tutwiler Prison, Dorm G1-28A, 8966 US Hwy 231, Wetumpka, AL.

There is a sense of urgency in requesting that this Honorable Court grant leave for the accompanying motion, as prayed in the contents therein, with exception of changed 2007 to 2006 on Appendix C.

Pursuant to 28 U.S.C.A. §1746(2) I declare under the penalty of perjury that the contents of the motion and contents of the supporting documentary evidence are true and correct to the best of recall of this movant.

Executed on September 2, 2008.

*Martha Jane Johnson*
Petitioner/Movant/Plaintiff, pro se

RECEIVED 2008 SEP -8 A 10: 55
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Peggy Jones
398 County Rd 26
Newville, AL 36353



Office of the Clerk
United States District Court
PO Box 711
Montgomery, AL 36101-0711

documents enclosed